**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ZACHARY ALT,

       Plaintiff,

  vs.

                                    Civil Action No.:

THOMAS SHIREY; WALT HANSLIK; SAM
ALBERT; MIKE RUSSO; and HIGHLANDS
SCHOOL DISTRICT,

       Defendants.

## COMPLAINT

AND NOW, comes the Plaintiff, Zachary Alt, by and through his counsel, Robert N.

Peirce, III, Esquire; Robert F. Daley, Esquire; D. Aaron Rihn, Esquire; Scott M. Simon, Esquire;

and the law firm of Robert Peirce & Associates, P.C., and hereby files the following Complaint,

and therefore avers as follows:

## JURISDICTION and VENUE

1.     This Court has jurisdiction over this action under the provisions of 28 U.S.C. §

1331; and because the instant matter is filed to obtain compensatory and punitive damages for

the deprivation, under color of state law, of the rights of a citizen of the United States secured by

the Constitution and federal law, pursuant to 42 U.S.C. § 1983.

2.     Venue lies within this judicial district, as all of the actions complained of herein

occurred within the Western District of Pennsylvania.

## **PARTIES**

3.      Plaintiff, Zachary Alt (hereinafter referred to as "Alt"), is an adult individual and a former student of Highlands High School, with an address of 3769 Donnellville Road, Natrona Heights, Allegheny County, Pennsylvania. At all times pertinent to the facts and circumstances surrounding the instant Complaint, Plaintiff was a minor child and was in the care and custody of the Defendants.

4.      Defendant, Thomas Shirey (hereinafter referred to as "Shirey"), is an adult individual who at all times pertinent hereto was an employee of Defendant Highlands School District, 1330 Eleventh Avenue, Natrona Heights, Allegheny County, Pennsylvania 15065, and served as the Principal of Highlands High School.

5.      Defendant, Walt Hanslik (hereinafter referred to as "Hanslik"), is an adult individual who at all times pertinent hereto was an employee of Defendant Highlands School District, 1330 Eleventh Avenue, Natrona Heights, Allegheny County, Pennsylvania 15065, and served as the Assistant Principal of Highlands High School.

6.      Defendant, Sam Albert (hereinafter referred to as "Albert"), is an adult individual who at all times pertinent hereto was an employee of Defendant Highlands School District, 1330 Eleventh Avenue, Natrona Heights, Allegheny County, Pennsylvania 15065, and served as the Head Football Coach at Highlands High School.

7.      Defendant, Mike Russo (hereinafter referred to as "Russo"), is an adult individual who at all times pertinent hereto was an employee of Defendant Highlands School District, 1330 Eleventh Avenue, Natrona Heights, Allegheny County, Pennsylvania 15065, and served as an Athletic Trainer for the Highlands High School football team.

8.      Defendant, Highlands School District, is a public school district, operating and organized at all times pertinent hereto under color of the state law of the Commonwealth of Pennsylvania.  Highlands School District has an address at 1330 Eleventh Avenue, Natrona Heights, Allegheny County, Pennsylvania 15065.  Moreover, Highlands High School is an educational institution which provides secondary education, grades nine through twelve, to students enrolled in Defendant Highlands School District.

## STATEMENT OF FACTS

9.      At all times pertinent hereto, Plaintiff Alt was a student at Highlands High School, and was under the care, custody, protection and control of the above-named Defendants. This custody was particularly heightened after Plaintiff Alt sustained his serious and traumatic injuries in a playoff game versus Knoch High School as set forth below.

10.      At the time of the filing of the instant pleading, Plaintiff Alt is nineteen (19) years old and will not reach the age of twenty (20) until April 14, 2011. Accordingly, Plaintiff Alt has preserved the instant claim(s) in accordance with 42 Pa.C.S.A. § 5533(b).

11.      Upon Plaintiff's entrance to Highlands High School in ninth grade, Plaintiff joined the Highlands High School football program and participated in said program through his freshman year.

12.      At that time, and at times relevant hereto, Defendant Albert was the Head Coach of the Highlands High School varsity football team, and was responsible for the oversight of the school's football program for grades nine through twelve.

13.      During Plaintiff's sophomore year at Highlands High School, Plaintiff was once again an active participant of the Highlands High School football program.

14.     In fact, during Plaintiff's sophomore year, he was a member of the varsity football team and played regularly on offense, defense and special teams.

15.     More specifically, Plaintiff played the fullback position on offense; defensive end/linebacker on defense; and was deployed as the "wedge buster" or "wedge breaker" on special teams.

16.     The nature of the duties and responsibilities of the aforesaid positions require those playing said positions to absorb consistent, violent and sudden contact with their opposition.

17.     Often times, this violent and sudden contact with their opposition occurs by way of a helmet to helmet collision.

18.     These helmet to helmet collisions can result in injuries including, but not limited to, temporary loss of consciousness, concussions and traumatic brain injuries.

19.     Additionally, studies have linked these traumatic brain injuries to more permanent and severe injuries including, but not limited to, psychiatric disorders; loss of long-term memory; depression; Alzheimer's disease; and, chronic encephalopathy (CTE).[1]

20.     The head injury most commonly associated with helmet to helmet collisions is a concussion.[2]

21.     A concussion is a traumatic injury to the tissues of the brain which often occurs as the result of a violent blow, shaking or spinning. [3]

22.     The most prevalent symptoms of a concussion include, but are not limited to, confusion, headache, amnesia, nausea or vomiting, fatigue and altered speech.[4]

---

[1] J Neuropathol Exp Neurol. 2009 Jul;68(7):709-35.
[2] "CDC - Injury - TBI - Concussion - Home Page." *Centers for Disease Control and Prevention*. 25 Aug. 2010. Web. 21 Mar. 2011. <http://www.cdc.gov/concussion/>.
[3] "CDC - Injury - TBI - Concussion - Home Page." *Centers for Disease Control and Prevention*. 25 Aug. 2010. Web. 21 Mar. 2011. <http://www.cdc.gov/concussion/>.

23.     Due to an increase in sports related head injuries, physicians have developed several means of monitoring both the initial severity of the concussion, as well as the progress of the athlete as he/she recovers from the injury.[5]

24.     The ImPACT (Immediate Post-Concussion Assessment and Cognitive Testing) Test "is the first, most-widely used, and most scientifically validated computerized concussion evaluation system."[6]

25.     The ImPACT Test "can be administered by an athletic trainer, school nurse, athletic director, team coach, team doctor, or anyone trained to administer baseline testing" and "is implemented effectively across high school, collegiate, and professional levels of sport participation."[7]

26.     The ImPACT Test provides a reliable baseline for all participants and also assists athletic trainers, coaches and team doctors in making the important decision of when an athlete may return back to the playing field.[8]

27.     The development of the ImPACT Test has provided those responsible for making the decision of when a player may return back to the field of play with more guidance so as to avoid a subsequent concussion and/or traumatic head injury.[9]

28.     Some time on or around October 12, 2007, Plaintiff Alt was participating in an interscholastic football game against Hampton High School.

---

[4] "CDC - Injury - TBI - Concussion - Signs and Symptoms." *Centers for Disease Control and Prevention*. 8 Mar. 2010. Web. 21 Mar. 2011. <http://www.cdc.gov/concussion/signs_symptoms.html>.
[5] "ImPACT Test: Overview and Features of Computer-based Concussion Evaluation Program." *ImPACT-Testing & Computerized Neurocognitive Assessment Tools*. Web. 21 Mar. 2011. <http://impacttest.com/about/background>.
[6] "ImPACT Test: Overview and Features of Computer-based Concussion Evaluation Program." *ImPACT-Testing & Computerized Neurocognitive Assessment Tools*. Web. 21 Mar. 2011. <http://impacttest.com/about/background>.
[7] "ImPACT Test: Overview and Features of Computer-based Concussion Evaluation Program." *ImPACT-Testing & Computerized Neurocognitive Assessment Tools*. Web. 21 Mar. 2011. <http://impacttest.com/about/background>.
[8] "ImPACT Test: Overview and Features of Computer-based Concussion Evaluation Program." *ImPACT-Testing & Computerized Neurocognitive Assessment Tools*. Web. 21 Mar. 2011. <http://impacttest.com/about/background>.
[9] "ImPACT Test: Overview and Features of Computer-based Concussion Evaluation Program." *ImPACT-Testing & Computerized Neurocognitive Assessment Tools*. Web. 21 Mar. 2011. <http://impacttest.com/about/background>.

29.     At some point during the course of the football game, Plaintiff Alt sustained a substantial hit to his head, thereby causing a "ringing" sensation for several seconds.

30.     During this short period of time, Plaintiff Alt also sustained a temporary loss of hearing.

31.     Plaintiff Alt was considerably disoriented during this time, but managed to gain his composure and get back on his feet.

32.     Plaintiff Alt continued to play, as he was not aware that he had sustained a significant head injury.

33.     Plaintiff Alt was not evaluated by the team trainer(s) or any member(s) of the coaching staff, despite the fact that this injury occurred in the open view of the trainer(s) and coach(es), and during the normal course of play.

34.     Subsequently, on or around November 2, 2007, Plaintiff Alt was participating in a interscholastic football game against Blackhawk High School

35.     Sometime during the course of the game, Plaintiff Alt was struck in the head and once again experienced a "ringing" sensation in his head which also resulted in a temporary loss of hearing.

36.     Again, Plaintiff Alt regained his composure, and continued to play for the remainder of the game.

37.     Plaintiff Alt was not aware that he had sustained a second significant head injury.

38.     Plaintiff Alt was not evaluated by the team trainer(s) or any member(s) of the coaching staff, despite the fact that this injury occurred in the open view of the trainer(s) and coach(es), and during the normal course of play.

39.     At no time pertinent hereto, did Defendant Albert, Defendant Russo and/or Defendant Highlands School District instruct their student athletes, including but not limited to Plaintiff Alt, on the causes, symptoms and dangers of traumatic brain injuries.

40.     At no time pertinent hereto, did Defendant Albert, Defendant Russo and/or Defendant Highlands School District utilize a form of baseline testing to monitor the progression and/or regression of head injuries sustained by their athletes, including but not limited to Plaintiff Alt.

41.     Defendant Albert, Defendant Russo and/or Defendant Highlands School District knew, or should have known, that traumatic brain injuries, including, but not limited to, concussions, occurred frequently, and that their student athletes should have been educated on these types of injuries.

42.     This deliberate indifference to the health, safety and welfare of their student athletes in failing to educate said student athletes on the causes, symptoms and dangers of traumatic head injuries was the common policy or custom of Defendant Albert, Defendant Russo and/or Defendant Highlands School District.

43.     On or about November 9, 2007, Plaintiff Alt was participating in an inter-scholastic football game against Knoch High School.

44.     Because it was a playoff game, the game was played at a neutral site, Fox Chapel Area High School.

45.     During the opening kickoff of the first quarter of the game, Plaintiff was on the kickoff coverage team and was responsible for breaking and/or "busting" the wall or "wedge" constructed by the opposing team to protect their kickoff returner.

46.     As the opposing team received the kickoff, Plaintiff proceeded forward at a considerable rate of speed in an effort to break or "bust" the "wedge" of the opposing team.

47.     At that time and place, Plaintiff and at least one member of the opposing team engaged in a sudden and vicious collision.

48.     This vicious collision included significant helmet to helmet contact between Plaintiff and said member(s) of the opposing team.

49.     As a result of this violent helmet to helmet impact, Plaintiff was injured.

50.     At the conclusion of the play, Plaintiff was clearly disoriented, but was able to jog off of the playing field in a laborious fashion.

51.     Immediately after making it off of the field of play, Plaintiff aimlessly walked the length of his team's sideline.

52.     This type of behavior was contrary to the common practice of Plaintiff Alt and his teammates, as said players were required to report immediately to an assigned coach so as to avoid any confusion on when they were to report into the game.

53.     Additionally, based upon information communicated to the Plaintiff by his teammates days and weeks after the game, Plaintiff's behavior was erratic upon reaching the sideline and they immediately recognized that something was awry with the Plaintiff.

54.     Despite Plaintiff's erratic and confused behavior, Defendant Albert and Defendant Russo failed to evaluate the Plaintiff to ensure that he was in a sufficient condition to reenter the game.

55.     This type of inaction by the aforesaid Defendants was a normal practice, custom or policy in deliberate indifference to the health, safety and welfare of student athletes of Highlands High School, including, but not limited to, Plaintiff Alt.

56.     Almost immediately subsequent to this flagrant inaction by said Defendants, Defendant Albert approached the Plaintiff on the sideline upon the first change of possession of the football, and instructed him to deliver a substantial hit to the opposition's middle linebacker.

57.     More specifically, Defendant Albert instructed the Plaintiff to "blow him up", referring to the type of violence with which he wanted Plaintiff Alt to strike the opposition's middle linebacker.

58.     In delivering this order, Defendant Albert personally observed the disorientated and confused disposition of the Plaintiff, yet acted in deliberate indifference to the health, safety and welfare of the Plaintiff by placing him back onto the field of play.

59.     As aforesaid, this deliberate indifference to the obvious impaired condition of the Plaintiff before placing him back into the game was a common policy or custom of Defendant Albert when dealing with his players, including the Plaintiff.

60.     This violent instruction from Defendant Albert is the Plaintiff's last memory of the game.

61.     Further exhibiting his intentions, on Highlands' first offensive play from scrimmage, Defendant Albert called a play which was designed for the fullback, the Plaintiff, to engage with the middle linebacker.

62.     In fact, this type of blocking scheme usually leads to an explosive one-on-one collision between the fullback and the middle linebacker.

63.     Because of the sheer speed of the development of this type of play and/or scheme, the collision between the fullback and middle linebacker often results in violent helmet to helmet contact.

64.     As expected, upon a review of the film of the first offensive play, Plaintiff and the middle linebacker for the opposing team engage in a violent helmet to helmet collision.

65.     This would mark the Plaintiff's second clear helmet to helmet collision of the game.

66.     Once again, Plaintiff was visibly injured.

67.     Plaintiff returned to his team's huddle with his head lowered into his chest.

68.     Despite their knowledge of his disoriented and confused state, and after witnessing a second significant helmet to helmet collision on the team's first offensive play of the game, Defendant Albert and Defendant Russo allowed Plaintiff to remain in the game, in complete deliberate indifference to the health, safety and welfare of the Plaintiff.

69.     This unwillingness to remove and/or sit an injured player was a practice, custom or policy maintained by the aforesaid Defendants.

70.     Plaintiff does not recollect the remainder of the game.

71.     However, based upon information later disclosed to the Plaintiff by his teammates, Plaintiff's condition worsened throughout the game and he was described to be acting in a "drunken state".

72.     In fear for Plaintiff's health, safety and welfare, at least two of his teammates approached Defendant Albert during the course of the game and advised him of Plaintiff's incoherent condition.  In response, Defendant Albert did nothing.

73.     This deliberate indifference to alerts and/or communications between he and his players regarding their health and the health of their teammates was a practice, custom or policy maintained by Defendant Albert.

74.     Equally as egregious, during the course of the game, several teammates witnessed Defendant Russo approach the Plaintiff and perform a brief and less than thorough examination of the Plaintiff.

75.     In fact, subsequent to this brief examination, a teammate of the Plaintiff's approached Defendant Russo and suggested that something was wrong and that maybe he should not reenter the game.

76.     In response, Defendant Russo suggested to the teammate that the Plaintiff had simply bumped his head and that he would return to play.

77.     This deliberate indifference to the concerns of players and teammates regarding injuries sustained by players, including the Plaintiff, was a common practice, custom or policy of Defendant Russo's.

78.     Moreover, despite Plaintiff exhibiting clear symptoms of a traumatic head injury, Defendant Russo did not appropriately assess the Plaintiff by neglecting to perform any type of cognitive testing

79.     More specifically, Defendant Russo did not perform an ImPACT Test on the Plaintiff.

80.     In fact, Defendant Russo did nothing, and the Plaintiff was forced to reenter the game.

81.     For the remainder of the game, Plaintiff maintained his full responsibilities on offense, defense and special teams.

82.     Based upon information later communicated to the Plaintiff, Plaintiff did engage in a conversation during the game with one of his teammates in which he conveyed to the teammate that his head hurt.

83.     Plaintiff does not have any recollection of this conversation ever occurring.

84.     It is believed and therefore averred that by the completion of the football game, Plaintiff had been involved in a number of subsequent violent collisions and/or impacts, some of which included blows to the head, only further aggravating his traumatic brain injuries.

85.     At the conclusion of the game, one of the Plaintiff's teammates who had advised Defendant Albert and Defendant Russo of Plaintiff's condition during the game, recognized that the Plaintiff's condition was worsening and that he was in need of medical attention.

86.     Accordingly, said teammate contacted Plaintiff's mother, Megan Alt, and informed her of Plaintiff's serious condition.

87.     Understanding the seriousness of Plaintiff's injuries at this point, Plaintiff's mother demanded that she speak with Defendant Russo.

88.     It is inexplicable as to why Defendant Russo did not make the initial call to Plaintiff's mother to deliver the serious news regarding Plaintiff's traumatic head injuries.

89.     It is equally unexplainable how a teammate was able to recognize the seriousness of Plaintiff's injuries while Defendant Russo, an Athletic Trainer, failed to do the same.

90.     In fact, prior to the telephone call by Plaintiff's teammate to Ms. Alt, it was the plan of Defendant Albert and Defendant Russo to require Plaintiff Alt to ride the bus back to school with his team.

91.     This oversight by Defendant Albert and Defendant Russo further exhibited said Defendants' deliberate indifference to the health, safety and welfare of the Plaintiff.

92.     In accordance with Defendant Russo's conversation with Plaintiff's mother, it was agreed that said Defendant would personally transport the Plaintiff to his home.

93.     Upon Defendant Russo's arrival with the Plaintiff to his home, Defendant Russo joked that Plaintiff was wandering all over the place and that he was acting funny.

94.     Defendant Russo then laughed as he explained that the Plaintiff was repeating the same several comments during the entirety of the trip from the game to Plaintiff's home.

95.     Even after observing the Plaintiff in this vulnerable state, Defendant Russo failed to understand the risks associated with Plaintiff's injuries, and suggested to Plaintiff's mother that she should just "put him to bed".

96.     Understanding the ignorance with which Defendant Russo was handling the seriousness of Plaintiff's injuries, Plaintiff's mother immediately transported the Plaintiff to the emergency room at Alle-Kiski Medical Center in Natrona Heights, Pennsylvania.

97.     It was later communicated to Megan Alt by one of Plaintiff's treating physicians that had she followed the advice of Defendant Russo and "put him to bed", Plaintiff would have most likely fallen into a comatose state.

98.     After an examination at Alle-Kiski Medical Center, it was determined that the Plaintiff had sustained a substantial closed head injury.

99.     As a result, Plaintiff was required to remain at the hospital and undergo a battery of diagnostic tests.

100.    Upon the filing of the instant Complaint, Plaintiff continues to suffer from serious and potentially permanent effects of this closed head injury.

101.    In fact, for well over the past three (3) years, the Plaintiff has been forced to receive medical treatment from numerous medical providers and medical facilities in an attempt to alleviate the symptoms of the traumatic head injury which was caused by the aforesaid acts of the Defendants.

102.    At all times relevant hereto, Defendant Highlands School District acted independently, and by and through its authorized agents, servants and employees, including, but not limited to, Defendant Shirey and Defendant Hanslik.

103.    At all times relevant hereto, Defendant Shirey and Defendant Hanslik were acting within the course and scope of their employment.

104.    As a direct and proximate result of the aforesaid Defendants' conduct as set forth above, Plaintiff Alt was injured, and he has and will continue to experience conscious pain, suffering and loss of enjoyment of life in the extreme.

105.    As a result of the previously described conduct of these Defendants, the Plaintiff, seeks damages for the following injuries:

       a.      Serious brain injuries;

       b.      Significant cognitive deficiencies;

       c.      Depression;

       d.      Frequent loss of balance;

       e.      Post-traumatic amnesia;

       f.      Short-term memory deficiencies;

       g.      Increased anxiety;

       h.      Emotional instability;

       i.      Behavioral instability;

       j.      Periodic insomnia;

       k.      Periodic hypersomnia;

       l.      Increased aggression;

       m.      Consistent vomiting associated with nausea;

n.      Fatigue;

o.      Blurred vision;

p.      Sudden fever and sweats;

q.      Debilitating headaches;

r.      Dizziness; and,

s.      A resulting impairment of earning capacity.

106.    All of the aforesaid injuries may be of a permanent nature; and, therefore, Plaintiff may suffer from residual problems for the remainder of his lifetime.

107.    A claim for such damages is being made in the instant Complaint.

108.    In addition to the aforesaid physical, emotional and cognitive injuries sustained as a result of the aforesaid acts of the Defendants, Defendant Highlands School District also acted in deliberate indifference of the health, safety and welfare of the Plaintiff by denying him of his education subsequent to the occurrence of Plaintiff's traumatic brain injury.

109.    At all times relevant hereto, Defendant Highlands School District acted independently, and by and through its authorized agents, servants and employees.

110.    Shortly after sustaining his traumatic head injury, Plaintiff and his mother, Megan Alt, met with Defendant Hanslik in November of 2007 to discuss what, if any, accommodations could be made by Defendant Highlands School District to aid Plaintiff in his recovery from his traumatic brain injuries.

111.    At that time, Defendant Hanslik advised that he already had knowledge of the injuries sustained by the Plaintiff prior to the commencement of their meeting.

112.    Regardless, Plaintiff and his mother informed Defendant Hanslik of the nature and severity of his injuries.  Specifically, Plaintiff and his mother expressed concerns regarding Plaintiff's sudden inability to concentrate on his studies both inside and outside of school.

113.    At the conclusion of the meeting, minor accommodations were made, including, but not limited to, allowing the Plaintiff to report to school later in the mornings if necessary and allowing the Plaintiff to carry a bottle of water into his classes.

114.    Unfortunately, these accommodations were met with resistance and ridicule by several of the Plaintiff's teachers.

115.    This resistance and ridicule brought even further attention to the Plaintiff and his injuries, thereby causing him great embarrassment, humiliation and anguish.

116.    Over the next few months, Plaintiff's symptoms worsened with increased efforts on his school work, and as a result, his performance level severely declined.

117.    Accordingly, at the direction of Plaintiff's treating physicians, Plaintiff's mother pled with Defendant Highlands School District, by and through Highlands High School, to employ a Brain Steps Advocate to assist Plaintiff with his school work.

118.    Plaintiff's mother also informed Highlands High School that by adding a temporary Brain Steps Advocate, teachers would gain a better understanding of how to instruct students with injuries similar to those of the Plaintiff's.

119.    At some time, Plaintiff's mother and a Brain Steps Advocate did meet with Defendant Hanslik.

120.    However, accommodations were never instituted which allowed the Plaintiff to fully realize the benefits of a Brain Steps Advocate.

121.   This inaction by Defendant Shirey, Defendant Hanslik and Defendant Highlands School District was an adopted practice, custom or policy in deliberate indifference to the level of education administered to its student athletes.

122.   Quite rapidly, Plaintiff's symptoms and conditions worsened, and the quality of his school work continued to decline.

123.   As a result, Plaintiff's grades suffered substantially.

124.   Accordingly, Plaintiff and his mother scheduled a meeting in January of 2008 with Defendant Shirey, the Principal of Highlands High School.

125.   At that time, Plaintiff's grades had declined to a level that he and his mother became concerned that he would not pass the tenth grade.

126.   Despite Defendant Hanslik's knowledge of the Plaintiff's injuries and subsequent difficulties nearly two months prior, Defendant Shirey claimed that he was unaware of Plaintiff's injuries and the recent cognitive issues he was experiencing.

127.   Defendant Shirey further alleged that he did not know of the problems Plaintiff was having with maintaining his attendance at school.

128.   This lack of knowledge of the injury itself, as well as the subsequent academic and attendance issues Plaintiff was having, was indicative of the Defendant Highlands School District's overall deliberate indifference to the general health, safety and welfare of its students, including the Plaintiff.

129.   However, once Defendant Shirey became aware of the severity and seriousness of Plaintiff's injuries and current academic situation, Defendant offered a solution in direct contraction to the intentions of the Plaintiff and his mother.

130.    Instead of proposing and/or instituting policies to aid the Plaintiff's efforts in obtaining an education, Defendant Shirey suggested that he could improve Plaintiff's grades with a "shake of his magic wand".

131.    This overt offer to fabricate and/or manipulate Plaintiff's grades was unprofessional, unethical and in deliberate indifference to the welfare of the Plaintiff.

132.    Moreover, this overt offer to fabricate and/or manipulate Plaintiff's grades was an adopted practice, custom or policy in deliberate indifference to the level of education administered to Highlands' students, including the Plaintiff.

133.    Plaintiff and his mother immediately disregarded this notion and were left without a solution concerning Plaintiff's decreased attendance and declining academic performance.

134.    Accordingly, in the spring semester beginning in January of 2008, Plaintiff's attendance continued to decrease.

135.    To the best of Plaintiff's mother's recollection, Plaintiff missed nearly the entirety of the remainder of the school year.

136.    Unexplainably, Plaintiff concluded his school year with nearly straight As.

137.    This was quite curious because even prior to his traumatic head injuries, Plaintiff had never achieved such consistent grades at this high-performance level.

138.    Plaintiff believes and avers that these grades were not indicative of his academic performance and were exaggerated to simply move Plaintiff through to his junior year.

139.    In actuality, Plaintiff did not earn a tenth grade education.

140.    Evidenced by an adopted practice, custom or policy in deliberate indifference to the welfare of its students, Plaintiff avers that the grades he received in both his junior and senior year at Highlands High School were also manipulated to allow him to graduate.

141.    Providing further proof of this adopted practice, custom or policy, during his junior year at Highlands High School, Plaintiff missed an estimated ninety (90) days of school; a near fifty percent (50%) absence rate for the school year.

142.    Yet, Plaintiff continued to receive grades well above the passing standard established by Defendant Highlands School District.

143.    This practice, custom or policy of issuing non-meritorious grades continued through Plaintiff's graduation from Highlands High School.

144.    In even further support of the allegation of an adopted practice, custom or policy of issuing non-meritorious grades, Plaintiff personally witnessed the manipulation and alteration of his grades on at least two occasions at Highlands High School.

145.    On each occasion, Plaintiff approached his teacher and asked what he could do to improve his overall grade in the respective course.

146.    Without hesitation, each teacher plainly opened his/her grade book and improved the Plaintiff's current grade from a failing mark to a passing mark.

147.    Plaintiff's report cards for the courses in which these grades were improved reflected these same alterations.

148.    While the Plaintiff did obtain a high school diploma from Highlands High School, the Plaintiff currently possesses an education which is well below a tenth grade level.

149.    As a direct result of these actions and/or inactions of Defendant Shirey, Defendant Hanslik and Defendant Highlands School District, Plaintiff has sustained a loss of past, present and future earnings, as well as a permanent diminution of his earning power and capacity.

150.    Defendant Shirey, Defendant Hanslik, Defendant Albert, Defendant Russo and Defendant Highlands School District, as well as its employees and agents, had a duty to ensure

that all teachers and/or administrators educating and/or advising within the school district were competent, ethical and acting in the best interests of its students and their education.

151.    At all times material hereto, all aforesaid Defendants, their agents and employees, owed a duty not to violate the federally protected legal rights of any student, including, but not limited to, the Plaintiff.

152.    All of the above-named Defendants and their agents and employees, owed a duty to protect students such as Plaintiff Zachary Alt, against the hazards he encountered and the harm he suffered while a student at Highlands High School.

153.    All of the above-named Defendants and their agents and employees had a duty to formulate, adopt and enforce adequate rules and policies to ensure that students such as Plaintiff, Zachary Alt, would be provided with an education that was not sabotaged by the unethical, unprofessional and disingenuous acts of its teachers and administration.


**CAUSES OF ACTION**

**COUNT I**

**PLAINTIFF v. DEFENDANTS SAM ALBERT AND MIKE RUSSO**

**VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN – DUE PROCESS CLAUSE FOR INJURY TO HUMAN DIGNITY ENFORCEABLE VIA 42 U.S.C. §1983**

154.    The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

155.    The actions of Defendants Albert and Russo detailed above violated Plaintiff's rights under the United States Constitution.

156.    More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural due process rights including, but not limited to, a liberty interest in his dignity as a human being.

157.    It was not objectively reasonable for these Defendants to ignore Plaintiff's serious and traumatic brain injuries and allow the Plaintiff to remain in the game and continue to sustain significant blows to the head when it was clearly hazardous to his health, safety and welfare.

158.    In fact, these Defendants' actions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety and welfare.

159.    Defendants Albert and Russo intentionally disregarded Plaintiff's obvious incoherent and vulnerable state, and then deprived Plaintiff of his constitutional rights as detailed above which has caused prolonged and potentially permanent injury, pain and suffering.

160.    Each of the above-named Defendants were acting in their capacity as coaches and/or trainers in the Defendant Highlands School District, and therefore acting under the color of state law.  Their actions and inactions which caused the Plaintiff's Constitutional deprivations are enforceable pursuant to 42 U.S.C. § 1983.

161.    Each of the above-named Defendants were deliberately indifferent to the Plaintiff, due to the fact that they knew that Zachary Alt faced a substantial risk of serious harm and they failed to take reasonable steps to avoid the harm.

162.    Each of the above-named Defendants are directly responsible for this constitutional violation.  Upon information and belief, the aforesaid Defendants, through either express policy or the inactions of their policy makers, had a policy and/or practice of reckless indifference to the rights, health and safety of student athletes including, but not limited to, the Plaintiff.

163.    This adopted practice, custom or policy is demonstrated by the fact that Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play where he sustained subsequent hits to the head, only aggravating these injuries.

164.    As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

165.    Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT II

### PLAINTIFF v. DEFENDANT SAM ALBERT AND DEFENDANT MIKE RUSSO

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY TO BODILY INTEGRITY ENFORCEABLE VIA 42 U.S.C. §1983

166.    The averments set forth in the preceding paragraphs are incorporated by reference thereto.

167.    The actions of Defendants Albert and Russo detailed above violated Plaintiff's rights under the United States Constitution.

168.    More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural due process rights including, but not limited to, a liberty interest in his bodily integrity.

169.    It was not objectively reasonable for these Defendants to ignore Plaintiff's serious and traumatic brain injuries and allow the Plaintiff to remain in the game and continue to sustain

significant blows to the head, thereby depriving him of his Constitutional rights as detailed above.

170.    The Defendants' actions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety and welfare.

171.    Defendants Albert and Russo intentionally disregarded Plaintiff's obvious incoherent and vulnerable state and then deprived Plaintiff of his constitutional rights as detailed above which has caused prolonged and potentially permanent injury, pain and suffering.

172.    At all times pertinent hereto, each of the above-named Defendants were acting in their capacity as coaches and/or trainers in the Defendant Highlands School District, and therefore acting under the color of state law.  Their actions and inactions which caused Plaintiff's Constitutional deprivations are enforceable pursuant to 42 U.S.C. § 1983.

173.    Each of the above-named Defendants were deliberately indifferent to the Plaintiff, in that they knew that Zachary Alt faced a substantial risk of serious harm and they failed to take reasonable steps to avoid the harm.

174.    Each of the above-named Defendants are directly responsible for this constitutional violation. Upon information and belief, the aforesaid Defendants, through either express policy or the inactions of their policy makers, had a policy and/or practice of reckless indifference to the rights, health and safety of student athletes including, but not limited to, the Plaintiff.

175.     This adopted practice, custom or policy is demonstrated by the fact that Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play and was denied his right to receive adequate emergency and medical treatment.

176.     As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

177.     Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

**COUNT III**

**PLAINTIFF v. DEFENDANT SAM ALBERT AND DEFENDANT MIKE RUSSO**

**VIOLATIONS OF THE UNITED STATES OF AMERICA'S
CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE
FOR INJURY AS A RESULT OF A STATE CREATED DANGER/SPECIAL
RELATIONSHIP ENFORCEABLE VIA 42 U.S.C. §1983**

178.     The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

179.     The actions of Defendants Albert and Russo detailed above violated Plaintiff's rights under the United States Constitution.

180.     More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural due process rights to be free from state occasioned and/or created dangers which caused harm to his bodily integrity and human dignity, and which are protected by the United States Constitution.

181.     It was not objectively reasonable for these Defendants to ignore Plaintiff's serious and traumatic brain injuries and allow the Plaintiff to remain in the game and continue to sustain significant blows to the head, when it was clearly foreseeable that by doing so, the Plaintiff faced a substantial risk of serious harm, and they failed to take reasonable steps to avoid the harm.

182.     Such action and/or inaction exhibited by Defendants Albert and Russo would shock the conscience of a reasonable person under like circumstances.

183.     Moreover, it was evident that by allowing the Plaintiff to remain in the game, the Plaintiff was a foreseeable victim of said Defendants' actions and/or inactions.

184.     Plaintiff Alt was an obvious member of a class subjected to the harm brought about by the State's actions and/or inactions.

185.     By way of Defendants actions and/or inactions, said Defendants utilized their position of authority and power to create a danger to the Plaintiff, and/or placed Plaintiff in a more vulnerable manner to the known risk of harm.

186.     The Defendants' actions and/or inactions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety and welfare.

187.     This adopted practice, custom or policy is demonstrated by the fact that Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play and was placed in a position of danger by State occasioned or created harm.

188.     As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

189.     Some of these severe and grievous injuries are potentially permanent in nature

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT IV

## PLAINTIFF v. DEFENDANT SAM ALBERT AND DEFENDANT MIKE RUSSO

## VIOLATIONS OF THE CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA UNDER ARTICLE I, SECTION I
## FOR INJURY TO BODILY INTEGRITY

190.    The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

191.    The actions of Defendants Albert and Russo detailed above violated Plaintiff's rights under the Constitution of the Commonwealth of Pennsylvania.

192.    As a result of aforementioned actions and/or inactions of Defendants Albert and Russo, Plaintiff Alt was deprived of his right to bodily integrity guaranteed to him by the Constitution of the Commonwealth of Pennsylvania, Article I, Section I, which states in pertinent part, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possession and protecting property and reputation, and of pursuing their own happiness."[10]

193.    The Defendants' actions and/or inactions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety and welfare.

194.    This adopted practice, custom or policy constituted a violation of the rights and privileges afforded to the Plaintiff by the Constitution of the Commonwealth of Pennsylvania, Article I, Section I.

195.    As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

196.    Some of these severe and grievous injuries are potentially permanent in nature

---

[10] Pa. Const., art. I, § 1.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT V

## PLAINTIFF v. DEFENDANT HIGHLANDS SCHOOL DISTRICT

## VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY TO HUMAN DIGNITY ENFORCEABLE VIA 42 U.S.C. §1983

197.    The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

198.    The actions of Defendant Highlands School District detailed above violated Plaintiff's rights under the United States Constitution.

199.    More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural due process rights including, but not limited to, a liberty interest in his dignity as a human being.

200.    The above-named Defendant was acting by and through it agents, employees and servants, and at all times pertinent hereto, said agents, employees and servants were acting within their official capacity as teachers, counselors and/or administrators in the Highlands School District, and therefore acting under the color of state law.  Their actions and inactions in depriving Plaintiff of his Constitutional rights are subject to enforcement via 42 U.S.C. § 1983.

201.    The Defendant's actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff's overall health, safety and welfare.

202.    As a direct and proximate result of the Defendant's unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

203.    Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT VI

## PLAINTIFF v. DEFENDANT HIGHLANDS SCHOOL DISTRICT

## VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY TO BODILY INTEGRITY ENFORCEABLE VIA 42 U.S.C. §1983

204.    The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

205.    The actions of Defendant Highlands School District detailed above violated Plaintiff's rights under the United States Constitution.

206.    More specifically, at all times relevant hereto, Plaintiff possessed both substantive and procedural rights including, but not limited to, a liberty interest in his bodily integrity.

207.    The above-named Defendant was acting by and through it agents, employees and servants, and at all times pertinent hereto, said agents, employees and servants were acting within their official capacity as teachers, counselors and/or administrators in the Highlands School District, and therefore acting under the color of state law.  Their actions and inactions in depriving Plaintiff of his Constitutional rights are subject to enforcement via 42 U.S.C. § 1983.

208.    The Defendant's actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff's overall health, safety and welfare.

209.    As a direct and proximate result of the Defendant's unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

210.    Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT VII

### PLAINTIFF v. DEFENDANT HIGHLANDS SCHOOL DISTRICT

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY AS A RESULT OF A STATE CREATED DANGER/SPECIAL RELATIONSHIP ENFORCEABLE VIA 42 U.S.C. §1983

211.    The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

212.    The actions of Defendant Highlands School District detailed above violated Plaintiff's rights under the United States Constitution.

213.    Plaintiff Alt possessed a substantive and procedural due process right to be free from State occasioned and/or created harm to his bodily integrity and human dignity which was protected by the United States Constitution.

214.    Such action and/or inaction exhibited by this Defendant would shock the conscience of a reasonable person under like circumstances.

215.    Plaintiff Alt was an obvious member of a class subjected to the harm brought about by the State's actions and/or inactions.

216.    By way of Defendant's actions and/or inactions, said Defendant utilized its position of authority and power to create a danger to the Plaintiff, and/or placed Plaintiff in a more vulnerable manner to the known risk of harm.

217.     The Defendant's actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to Plaintiff's overall health, safety and welfare.

218.     This adopted practice, custom or policy is demonstrated by the fact that Plaintiff sustained an obvious traumatic head injury but was forced back onto the field of play and was placed in a position of danger by State occasioned or created harm.

219.     As a direct and proximate result of the Defendant's unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

220.     Some of these severe and grievous injuries are potentially permanent in nature

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT VIII

### PLAINTIFF v. DEFENDANTS HIGHLANDS SCHOOL DISTRICT, THOMAS SHIREY AND WALT HANSLIK

### VIOLATIONS OF THE CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA UNDER ARTICLE I, SECTION I FOR INJURY TO PROPERTY INTERESTS – RIGHT TO AN EDUCATION

221.     The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

222.     The actions and/or inactions of Defendants Highlands School District, Shirey and Hanslik detailed above violated Plaintiff's rights under the Constitution of the Commonwealth of Pennsylvania.

223.     The above-named Defendants were acting by and through their agents, employees and servants, and at all times pertinent hereto, said agents, employees and servants were acting

within their official capacity as teachers, counselors and/or administrators in the Highlands School District.

224.    The aforesaid Defendants were responsible for providing Plaintiff Alt with a free and appropriate education.

225.    Additionally, Defendants Highlands School District, Shirey and Hanslik were responsible for the administration and implementation of the District's curriculum to its students, including, but not limited to Plaintiff Alt.

226.    It was not objectively reasonable for Defendants Highlands School District, Shirey and Hanslik to ignore Plaintiff's serious and traumatic brain injuries by failing to provide necessary accommodations to the Plaintiff, and for manipulating and/or improving the Plaintiff's grades so that he advanced to the next school year and eventually graduated, despite not receiving an appropriate education, or any education at all after his injury.

227.    Under Article I, Section I of the Constitution of the Commonwealth of Pennsylvania: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possession and protecting property and reputation, and of pursuing their own happiness."[11]

228.    Additionally, by way of Article III, Section XIV of the Constitution of the Commonwealth of Pennsylvania: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."[12]

---

[11] Pa. Const., art. I, § 1.
[12] Pa. Const., art. III § 14.

229.    By establishing and maintaining a public school system which students were required to attend, Article III, Section XIV thereby extended a right to an education to students including, but not limited to, Plaintiff Alt.

230.    Accordingly, Plaintiff Alt possessed a property interest in his education.

231.    The aforesaid Defendants' willful disregard of the Plaintiff's condition deprived him of this property interest guaranteed by the Constitution of the Commonwealth of Pennsylvania, Article I, Section I.

232.    As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

233.    Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT IX

### PLAINTIFF v. DEFENDANTS HIGHLANDS SCHOOL DISTRICT, THOMAS SHIREY AND WALT HANSLIK

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE/DEPRIVATION OF PROPERTY INTERESTS BY FAILING TO PROVIDE AN EDUCATION ENFORCEABLE VIA 42 U.S.C. §1983

234.    The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

235.    The actions and/or inactions of Defendants Highlands School District, Shirey and Hanslik detailed above violated Plaintiff's rights under the Constitution of the United States of America.

236.    At all times pertinent hereto, Defendants were acting by and through their agents, employees and servants, and said agents, employees and servants were acting within their official capacity as teachers, counselors and/or administrators in the Highlands School District.

237.    Defendants Highlands School District, Shirey and Hanslik were responsible for providing Plaintiff Alt with a free and appropriate education.

238.    Additionally, Defendants Highlands School District, Shirey and Hanslik were responsible for the administration and implementation of the District's curriculum to its students, including, but not limited to Plaintiff Alt.

239.    It was not objectively reasonable for the aforesaid Defendants to ignore Plaintiff's serious and traumatic brain injuries by failing to provide necessary accommodations to the Plaintiff, and for manipulating and/or improving the Plaintiff's grades so that he advanced to the next school year and eventually graduated.

240.    Under the Fourteenth Amendment of the Constitution of the United States of America: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."[13]

241.    By way of Amendment Fourteen of the Constitution of the United States of America, as well as Article III, Section XIV of the Constitution of the Commonwealth of Pennsylvania as set forth previously, Plaintiff possessed a property interest in his education.

---

[13] U.S. Const. amend. XIV, sec. 1.

242.     The aforesaid Defendants' willful disregard of the Plaintiff's condition deprived him of this property interest guaranteed by Amendment Fourteen of the Constitution of the United States of America without due process of law.

243.     Moreover, the Defendants' actions and/or inactions demonstrated an adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety and welfare.

244.     As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

245.     Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT X

**PLAINTIFF v. DEFENDANTS  HIGHLANDS SCHOOL DISTRICT,
THOMAS SHIREY AND WALT HANSLIK**

**VIOLATIONS OF 29 U.S.C. § 794 AND U.S.C. § 12132 et seq., THE REHABILATION
ACT AND THE AMERICANS WITH DISABILITIES ACT**

246.     The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

247.     Title II of The Americans with Disabilities Act prohibits any local government or department thereof from denying the benefits of their services or discriminating against any person with a disability.

248.    At all times pertinent hereto, Defendant Highlands School District was a local governmental entity within the purview of The Americans with Disabilities Act and was a recipient of "federal financial assistance" as established in the Rehabilitation Act.

249.    Through the Rehabilitation Act and Title II of The Americans with Disabilities Act, school districts such as Defendant Highlands School District are required to provide students with disabilities, including Plaintiff Alt, with a free and appropriate public education.

250.    Defendant Highlands School District, by and through its agents, employees and servants, including, but not limited to, Defendants Shirey and Hanslik, violated Plaintiff Alt's federally guaranteed right to be free from discrimination on the basis of disability by failing to make reasonable accommodations, and by failing to train and/or educate its agents, employees and servants on the needs of students with disabilities such as Plaintiff Alt.

251.    Moreover, the aforesaid Defendants failed to implement policies, practices and procedures to accommodate the needs of students with disabilities such as Plaintiff Alt.

252.    Such actions and/or inactions by the aforesaid Defendants were tantamount to intentional discrimination of the Plaintiff based upon his disability.

253.    Plaintiff Alt did not receive a free and appropriate public education as guaranteed by the Rehabilitation Act and The Americans with Disabilities Act.

254.    As a direct and proximate result of the acts of the Defendants described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

255.    Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## COUNT XI

### PLAINTIFF v. DEFENDANTS HIGHLANDS SCHOOL DISTRICT, THOMAS SHIREY AND WALT HANSLIK

### VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN
### VIOLATION OF EQUAL PROTECTION ENFORCEABLE VIA 42 U.S.C. §1983

256.    The averments set forth in the preceding paragraphs are incorporated by reference thereto as if more fully set forth herein.

257.    The actions and/or inactions of Defendants Highlands School District, Shirey and Hanslik detailed above violated Plaintiff's rights under the Fourteenth Amendment of the Constitution of the United States of America.

258.    For purposes of the Fourteenth Amendment of the Constitution of the United States of America, Plaintiff Alt was a member of a protected class in that he was disabled and/or should have been regarded as disabled by the Defendants Highlands School District, Shirey and Hanslik.

259.    All of the aforementioned actions of Defendants Highlands School District, Shirey and Hanslik resulted in treatment of Plaintiff Alt which was differential to the treatment of similarly situated students.

260.    At all times pertinent hereto, the aforesaid Defendants' conduct was both intentional and arbitrary and to the detriment of Plaintiff Alt.

261.    There was no rational basis for the aforesaid Defendants' differential treatment of Plaintiff Alt.

262.    Moreover, this differential treatment demonstrated the Defendants adopted practice, custom or policy in deliberate indifference to Plaintiff's overall health, safety and welfare.

263.    This adopted practice, custom or policy by the Defendants constituted a violation of the rights and privileges afforded to the Plaintiff by the Fourteenth Amendment of the Constitution of the United States of America, and further denied Plaintiff Alt equal protection under the law.

264.    As a direct and proximate result of the Defendants' unconstitutional acts described above, Plaintiff sustained severe and grievous injuries as described and averred herein.

265.    Some of these severe and grievous injuries are potentially permanent in nature.

WHEREFORE, the Plaintiff, Zachary Alt demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

## PUNITIVE DAMAGES

266.    The actions of all of the named Defendants detailed herein are outrageous, in that, with timely and proper interventions by said Defendants, the severe and potentially permanent brain injuries sustained by the Plaintiff could have been avoided. It is evident that these Defendants acted with deliberate indifference and in a conscience shocking manner at all relevant times. Consequently, an award of punitive damages is necessary to punish these Defendants, as well as to inform them that the requirements of the United States Constitution and the Constitution of the Commonwealth of Pennsylvania also applies to them.

267.    The Plaintiff cannot, nor does he, seek an award of punitive damages against Defendant Highlands High School.

## DEMAND FOR TRIAL BY JURY

268.      The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court grant him the following relief:

1.      A judgment against all Defendants, jointly and severally, awarding Compensatory Damages to the Plaintiff in an amount to be determined by a Jury and/or the Court.

2.      A judgment against Defendant Thomas Shirey, Defendant Walt Hanslik, Defendant Sam Albert and Defendant Mike Russo awarding Punitive Damages to the Plaintiff in an amount to be determined by a Jury and/or the Court.

3.      A monetary award for attorneys' fees and the costs of this action, pursuant to 42 U.S.C. § 1988.

4.      Any other relief that this Court finds to be just, proper and equitable.

Respectfully submitted,

By: _/s/ Robert N. Peirce, III Esquire_
    ROBERT N. PEIRCE, III ESQUIRE
    Pa. I.D. No.: 76130


By: _/s/ Robert F. Daley, Esquire_
    ROBERT F. DALEY, ESQUIRE
    Pa. I.D. No.: 81992

    ROBERT PEIRCE & ASSOCIATES
    Firm I.D. No.: 839
    2500 Gulf Tower, 707 Grant Street
    Pittsburgh, PA 15219
    (412) 281-7229

    Counsel for Plaintiff