**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ZACHARY ALT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 11-0468 |
| vs. | ) | |
| | ) | Judge David S. Cercone |
| THOMAS SHIREY, WALT | ) | Magistrate Judge Lisa Pupo Lenihan |
| HANSLIK, SAM ALBERT, MIKE | ) | |
| RIZZO, and HIGHLANDS | ) | |
| SCHOOL DISTRICT, | ) | |
| | ) | Re: ECF No. 19 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendants at ECF No. 19 be granted in part and denied in part.  It should be denied with prejudice in all respects except as it relates to the following claims: 1) special relationship claim as to all defendants; 2) equal protection claim as to all defendants; and 3) the state action issue as it concerns Defendant Rizzo.

It is further recommended that Defendants' Motion to Dismiss Defendant Rizzo be denied without prejudice and that Plaintiff be granted leave to amend his Complaint as to whether Defendant Rizzo is a state actor.  If Plaintiff fails to file a curative amendment within the time allowed by the District Judge, then this Magistrate Judge recommends that Defendant Rizzo be dismissed with prejudice.  Upon the filing of a Third Amended Complaint, Defendants may file a Second Motion to Dismiss on the issue of whether Defendant Rizzo is a state actor if they so desire.

II. **REPORT**

 A. FACTS

 Plaintiff Zachary Alt ("Plaintiff") is a former student of Highlands High School, which provides secondary education to students enrolled at Defendant Highlands School District ("School District"). (Second Amended Complaint, ECF No. 18 at ¶¶ 3, 8.) During all times relevant to the complaint, Defendant Thomas Shirey ("Shirey") was employed by the School District and served as the Principal of Highlands High School. (ECF No. 18 at ¶ 4.) Defendant Walt Hanslik ("Hanslik") was the High School's Assistant Principal, and Defendant Sam Albert ("Albert") was the Head Football Coach. (ECF No. 18 at¶¶ 6-7.) The Athletic Trainer for the Highlands High School football team was Defendant Mike Rizzo ("Rizzo"), who was an employee of Keystone Rehabilitation Systems. (ECF No. 18 at ¶ 7.)

 Plaintiff joined the high school football team his freshman year. (ECF No. 18 at ¶11.) During Plaintiff's sophomore year, he was a member of the varsity football team and played on offense, defense, and special teams. (ECF No. 18 at ¶ 14.)

 On or around October 12, 2007, Plaintiff participated in a football game. (ECF No. 18 at ¶ 28.) At some point during the game, Plaintiff sustained a hit to his head, causing a "ringing" sensation for several seconds and a temporary loss of hearing. He was also disoriented, but managed to regain his composure and get back on his feet. (ECF No. 18 at ¶¶ 29-31.) The injury occurred in open view of trainers and coaches, but Plaintiff was not evaluated. (ECF No. 18 at ¶ 33.)

 On or around November 2, 2007, Plaintiff played in a football game. Again, Plaintiff was struck in the head and experienced a "ringing" sensation in his head and a temporary loss of hearing. He again regained his composure and continued to play for the remainder of the game.

Although the injury occurred in view of trainers and coaches, Plaintiff was not evaluated. (ECF No. 18 at ¶¶ 34-38.)

Plaintiff avers that at no time did Defendants Albert, Rizzo or the School District "instruct their student athletes . . . on the causes, symptoms and dangers of traumatic brain injuries." (ECF No. 18 at ¶ 39.) In addition, Plaintiff alleges that at no time did Defendants Albert, Rizzo or the School District "utilize a form baseline testing to monitor the progression and/or regression of head injuries sustained by their athletes." (ECF No. 18 at ¶ 40.)

On or about November 9, 2007, Plaintiff participated in a playoff football game. (ECF No. 18 at ¶¶ 43-44.) Plaintiff was involved in a helmet to helmet collision with a member of the opposing team. Plaintiff was "clearly disoriented, but was able to jog off of the playing field in a laborious fashion." (ECF No. 18 at ¶¶ 46-50.) Immediately after leaving the playing field, "Plaintiff aimlessly walked the length of his team's sideline," instead of reporting to an assigned coach as was customary for Plaintiff and his teammates. (ECF No. 18 at ¶¶ 51-52.) Plaintiff's teammates reported to him that his "behavior was erratic upon reaching the sideline and they immediately recognized that something was awry with the Plaintiff." (ECF No. 18 at ¶ 53.) Plaintiff alleges that "[d]espite Plaintiff's erratic and confused behavior, Defendant Albert and Defendant Rizzo failed to evaluate the Plaintiff to ensure that he was in a sufficient condition to reenter the game." (ECF No. 18 at ¶ 54.) Almost immediately after this first helmet to helmet collision on November 9th, Defendant Albert approached Plaintiff and "instructed him to deliver a substantial hit to the opposition's middle linebacker," and to "'blow him up.'" (ECF No. 18 at ¶¶ 56-57.) When instructing Plaintiff to deliver the "substantial hit," "Defendant Albert personally observed the disorientated and confused disposition of the Plaintiff," yet placed Plaintiff back onto the field of play. (ECF No. 18 at ¶ 58.) This instruction by Albert to Plaintiff

is Plaintiff's last memory of the game. (ECF No. 18 at ¶ 60.) The review of the films of this first offensive play of the game reflect that Plaintiff and the middle linebacker for the opposing team engaged in a violent helmet to helmet collision. (ECF No. 18 at ¶ 64.) Plaintiff was visibly injured after this second "clear helmet to helmet collision of the game." (ECF No. 18 at ¶ 65-66.) "Plaintiff returned to his team's huddle with his head lowered into his chest." (ECF No. 18 at ¶ 67.) Plaintiff avers that Defendants Albert and Rizzo knew of Plaintiff's disoriented and confused state, and after witnessing two helmet to helmet collisions, they allowed Plaintiff to remain in the game. (ECF No. 18 at ¶ 68.) Plaintiff alleges that Defendants' unwillingness to remove and/or sit an injured player was a practice, custom or policy of Albert and Rizzo. (ECF No. 18 at ¶ 69.) Teammates later informed Plaintiff that his condition worsened throughout the game and he was told that he was acting in a "drunken state." (ECF No. 18 at ¶ 71.) At least two of Plaintiff's teammates approached Defendant Albert to advise him of Plaintiff's incoherent condition but Albert did nothing. (ECF No. 18 at ¶ 72.)

A teammate also informed Defendant Rizzo that there was something wrong with Plaintiff and that maybe he should not reenter the game; Rizzo suggested to the teammate that Plaintiff had simply bumped his head and that he would return to play. (ECF No. 18 at ¶¶ 75-76.) Plaintiff further avers that Rizzo performed no cognitive testing on Plaintiff, including an ImPACT Test. (ECF No. 18 at ¶¶ 78-79.) Plaintiff alleges that Rizzo did nothing, "and the Plaintiff was forced to reenter the game." (ECF No. 18 at ¶ 80.) Plaintiff believes that by the completion of the football game, he had been involved in a number of subsequent violent collisions and/or impacts, some which included blows to the head, and that these collisions further aggravated his traumatic brain injuries. (ECF No. 18 at ¶ 84.)

At the conclusion of the game, a teammate noticed that Plaintiff's condition was worsening and that he needed medical attention. He called Plaintiff's mother to inform her of his condition. (ECF No. 18 at ¶¶ 85-86.) Defendant Rizzo, after speaking with Plaintiff's mother, personally transported Plaintiff to Plaintiff's home. (ECF No. 18 at ¶ 92.) Upon arriving at Plaintiff's home, Defendant Rizzo joked about Plaintiff's behavior and suggested to Plaintiff's mother that she should just "put him to bed." (ECF No. 18 at ¶¶ 93-95.) Plaintiff's mother immediately transported Plaintiff to the emergency room at Alle-Kiski Medical Center. (ECF No. 18 at ¶ 96.) An examination revealed that Plaintiff had sustained a substantial closed head injury. (ECF No. 18 at ¶ 98.) Plaintiff continues to suffer numerous physical, emotional, and cognitive injuries that could continue for the rest of his life. (ECF No. 18 at ¶¶ 104-07.)

In addition, Plaintiff avers that Defendant School District denied Plaintiff his education subsequent to the occurrence of Plaintiff's closed head injury. In November 2007, shortly after sustaining his closed head injury, Plaintiff and his mother met with Defendant Hanslik to discuss what, if any, accommodations could be made by Defendant School District to assist Plaintiff in his recovery from the closed head injury. (ECF No. 18 at ¶¶ 108-110.) "Plaintiff and his mother expressed concerns regarding Plaintiff's sudden inability to concentrate on his studies both inside and outside of school." (ECF No. 18 at ¶ 112.) Minor accommodations were made, and over the next few months, Plaintiff's symptoms worsened, and his performance level in school severely declined. (ECF No. 18 at ¶¶ 113-116.) At the direction of Plaintiff's treating physicians, Plaintiff's mother "pled" with the School District to employ a temporary Brain Steps Advocate to assist Plaintiff with his school work. Plaintiff's mother and a Brain Steps Advocate did meet with Defendant Hanslik, however, "accommodations were never instituted which allowed the Plaintiff to fully realize the benefits of a Brain Steps Advocate." (ECF No. 18 at ¶¶ 119-120.)

Plaintiff's symptoms continued to worsen, and Plaintiff's grades suffered substantially. (ECF No. 18 at ¶¶ 122-23.)

Thereafter, in January 2008, Plaintiff and his mother scheduled a meeting with Defendant Shirey, Principal of Highlands High School. Plaintiff's grades had declined to the point where he and his mother were concerned that he would not pass the tenth grade. (ECF No. 18 at ¶¶ 124-25.) "Defendant Shirey suggested that he could improve Plaintiff's grades with a "'shake of his magic wand.'" (ECF No. 18 at ¶ 130.) That is, Defendant Shirey offered to manipulate and/or fabricate Plaintiff's grades. "Plaintiff and his mother immediately disregarded this notion and were left without a solution concerning Plaintiff's decreased attendance and declining academic performance." (ECF No. 18 at ¶ 133.) In the spring semester beginning in January of 2008, Plaintiff's attendance continued to decrease and Plaintiff missed nearly the entirety of the remainder of the school year; yet Plaintiff concluded the school year with nearly straight As. (ECF No. 18 at ¶¶ 134-36.) These grades were markedly higher than Plaintiff's typical grades before the closed head injury. Plaintiff alleges that "[e]videnced by an adopted practice, custom or policy in deliberate indifference to the welfare of its students, . . .the grades he received in both his junior and senior year at Highlands High School were also manipulated to allow him to graduate." (ECF No. 18 at ¶ 140.) Plaintiff avers that in actuality, he did not earn a tenth grade education. (ECF No. 18 at ¶¶ 138-39.) He was absent nearly 50% of his junior year, yet continued to receive well above passing grades. (ECF No. 18 at ¶¶ 141-42.) "Plaintiff personally witnessed the manipulation and alteration of his grades on at least two occasions at Highlands High School." (ECF No. 18 at ¶¶ 144-47.)

On April 7, 2011, Plaintiff filed his Complaint, and on April 14, 2011, he filed an amended complaint as a matter of course. *See* Fed. R. Civ. P. 15(a) (1). Thereafter, on June 27,

2011, Plaintiff filed a Motion to Amend/Correct the Amended Complaint which was granted by this Court on July 14, 2011. Plaintiff then filed a 12-count Second Amended Complaint containing the following claims:

Count I: a Fourteenth Amendment Due Process claim for injury to human dignity against Defendants Albert and Rizzo pursuant to 42 U.S.C. § 1983;

Count II: a Fourteenth Amendment Due Process claim for injury to bodily integrity against Defendants Albert and Rizzo pursuant to 42 U.S.C. § 1983;

Count III: a Fourteenth Amendment due process claim under the state created danger/special relationship theory against Defendants Albert and Rizzo pursuant to 42 U.S.C. § 1983;

Count IV: a claim under the Pennsylvania Constitution, Art. I, § I for injury to bodily integrity against Defendants Albert and Rizzo;

Count V: a Fourteenth Amendment Due Process claim for injury to human dignity against Defendant Highlands School District pursuant to 42 U.S.C. § 1983;

Count VI: a Fourteenth Amendment Due Process claim for injury to bodily integrity against Defendant Highlands School District pursuant to 42 U.S.C. § 1983;

Count VII: a Fourteenth Amendment due process claim under the state created danger/special relationship theory against Defendant Highlands School District pursuant to 42 U.S.C. § 1983;

Count VIII: a claim under the Pennsylvania Constitution, Art. I, § I for injury to property interests—right to an education against Defendants Highlands School District, Shirey and Hanslik;

Count IX: : a Fourteenth Amendment due process claim for deprivation of property interests by failing to provide an education against Defendants Highlands School District, Shirey and Hanslik pursuant to 42 U.S.C. § 1983;

<u>Count X</u>: a claim pursuant to the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA") against Defendants Highlands School District, Shirey and Hanslik;

<u>Count XI</u>: a Fourteenth Amendment equal protection claim against Defendants Highlands School District, Shirey and Hanslik pursuant to 42 U.S.C. § 1983; and

<u>Count XII</u>: a state law negligence claim against Defendant Rizzo.

Plaintiff seeks punitive damages against all individual Defendants.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's entire Second Amended Complaint for failure to state a claim upon which relief can be granted.

## B.  <u>LEGAL STANDARD</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States

Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,*

515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and

described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations
> will no longer survive a motion to dismiss: "threadbare recitals of
> the elements of a cause of action, supported by mere conclusory
> statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent
> dismissal, all civil complaints must now set out "sufficient factual
> matter" to show that the claim is facially plausible. This then
> "allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." *Id.* at 1948. The
> Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must
> show that the allegations of his or her complaints are plausible. *See
> Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the United States Court of Appeals for the Third Circuit in

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009)*,* set forth the following two-prong test

to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. [*Iqbal,*129
> S. Ct. at 1949]. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an
> entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the
> Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not 'show [n]'-
> 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949.
> This "plausibility" determination will be "a context-specific task
> that requires the reviewing court to draw on its judicial experience
> and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

### C.  ANALYSIS

**SECTION 1983 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS**

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or any other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim for relief under this provision, a plaintiff must demonstrate

that the conduct in the complaint was committed by a person or entity acting under color of state

law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the

Constitution or the laws of the United States.  *Piecknick v. Commonwealth of Pennsylvania*, 36

F.3d 1250, 1255-56 (3d Cir. 1994).  Section 1983 does not create rights; it simply provides a

remedy for violations of those rights created by the United States Constitution or federal law.

*Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

### STATE ACTION

Defendants argue that all § 1983 claims against Defendant Rizzo must be dismissed

because Plaintiff avers that Rizzo "was an employee of Keystone Rehabilitation Systems,"

("Keystone") (ECF No. 18 at ¶ 7), and references the contract between Highlands High School

and Keystone to provide an athletic trainer to the High School (ECF No. 18 at ¶ 267).

Defendants contend that because Plaintiff admits Rizzo is not a governmental employee, and has failed to plead why Rizzo is a state actor, all § 1983 claims against him should be dismissed. In response, Plaintiff contends that Defendants "woefully fail" to raise this issue, and consequently, Plaintiff offers no legal argument. (ECF No. 22 at 8.)

As noted above, the "under color of law" requirement means that purely private conduct, no matter how discriminatory or wrongful, does not violate § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Private conduct, however, will satisfy the "under color" requirement if the deprivation of a federal right is "fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). The United States Court of Appeals for the Third Circuit has set forth a comprehensive analysis of the various tests used to determine whether there is a sufficiently close nexus between the State and the challenged action such that the seemingly private conduct may be fairly treated as that of the State. *Kach v. Hose*, 589 F.3d 626, 646-49 (3d Cir. 2009). This Court is not convinced that Rizzo is a state actor for purposes of § 1983 liability. *See Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982) (acts of private contractors do not become acts of government because they engage in public contracts); *Kach*, 589 F.3d at 646-48 (security guard employee of private security firm under contract with school not state actor); *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 710-11 (3d Cir. 1993) (private entity and its employee under contract with school district to provide transportation for students to and from school not state actors). The United States Court of Appeals for the Third Circuit has instructed that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court *must* permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (emphasis added) (citations omitted). In light of the admonition in *Phillips*, and the fact that neither party engaged in any serious legal analysis regarding this important issue, the Court

will recommend that the District Court direct Plaintiff to file a curative amendment setting forth facts plausibly suggesting that Defendant Rizzo is a state actor. Consequently, Defendants' Motion to Dismiss the § 1983 claims against Defendant Rizzo should be denied without prejudice. For purposes of the remainder of the Court's Report and Recommendation, however, the Court assumes that Rizzo is a state actor.

SUBSTANTIVE DUE PROCESS CLAIMS

1. Count I against Albert and Rizzo for violation of the Right to Human Dignity

Defendants argue that Count I for violation of the Right to Human Dignity should be dismissed because they "are at a loss to find any legal support that Plaintiff, as a student at Highlands High School, was owed such a duty under the Fourteenth Amendment." (ECF No. 20 at 4.) Plaintiff responds that "courts across the country have consistently recognized the right to human dignity." (ECF No. 22 at 7.)

The Court has carefully reviewed Count I. It appears that Plaintiff is attempting to allege a violation of the liberty interest in bodily integrity protected by the Fourteenth Amendment Substantive Due Process Clause. In *Rochin v. California*, the United States Supreme Court referred to the dignity of every person, and the preservation of that dignity from the outrageous acts of government. 342 U.S. 165, 174 (1952). *Rochin*, a Fourteenth Amendment substantive due process case, involved the forcible stomach pumping of a criminal suspect at the direction of the sheriff in order to produce morphine capsules that the suspect ingested when the sheriff entered an open door of the suspect's home and forced open the suspect's bedroom door. *Id.* at 166. Thereafter, these capsules were used to convict the criminal defendant. *Id.* The United States Supreme Court concluded that the means used to obtain the conviction was "conduct that

12

shocks the conscience." *Id.* at 172. The Court noted that it would not "afford [such] brutality the cloak of law." *Id.* at 173. Nor did it view state court decisions as "legaliz[ing] force so brutal and *so offensive to human dignity* in securing evidence from a suspect as [was] revealed by this record." *Id.* at 174 (emphasis added).

Thereafter, many decisions from various courts of appeals and district courts have used the language in *Rochin* regarding human dignity to recognize the protection of the Fourteenth Amendment's Substantive Due Process Clause. *See Smith v. Half Hollow Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (teacher's slapping of student cannot be viewed as so brutal and offensive to human dignity as to shock conscience); *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 921 (8th Cir. 2001) (teacher's daily comments to allegedly disabled student calling her "stupid," "retarded," and "dumb" in front of classmates, and hitting her in face with notebook neither "shock the conscience" nor "offend judicial notions of fairness or human dignity."); *Phillips v. Borough of Keyport*, 107 F.3d 164, 187 (3d Cir. 1997) (substantive due process should be invoked only in those extreme circumstances where governmental action shocks the conscience as being offensive to human dignity)(Alito, J., dissenting). *See also River Nile Invalid Coach and Ambulance, Inc. v. Velez*, 601 F. Supp.2d 609, 621 (D.N.J. 2009) (substantive due process reserved for most egregious government abuses against liberty that shock the conscience, offend judicial notions of fairness, and that are offensive to human dignity); *Royster v. Brown*, No. 3:07cv54/MCR/MD, 2007 WL 2376261, at *4 (N.D. Fla. Aug. 14, 2007) (citing *Rochin*, 342 U.S. at 172) (A second theory under which a plaintiff may bring a substantive due process claim concerns conduct by government that shocks the conscience, offends judicial notions of fairness, or offends human dignity.) ; *Kurilla v. Callahan*, 68 F. Supp.2d 556, 563-65

(M.D. Pa. 1999) (punching of plaintiff in chest, causing bruise and red marks did not shock the conscience for purposes of substantive due process violation).

Here, Plaintiff's averments cross the line from possible to plausible with regard to a Fourteenth Amendment substantive due process violation. *See Twombly*, 550 U.S. at 556-57. Plaintiff repeatedly avers that Defendants Albert and Rizzo "intentionally disregarded Plaintiff's obvious incoherent and vulnerable state," that occurred as a result of significant blows to the head that occurred during the playoff game on November 9, 2007, yet Plaintiff "was *forced* back onto the field of play where he sustained subsequent hits to the head, only aggravating these injuries." (ECF No. 18 at ¶¶ 157-165, 159, 163, 43-44.) (emphasis added). Plaintiff further avers that after sustaining obvious and significant injuries during the opening play of the playoff game, Defendants ordered Plaintiff to deliver significant blows to his opponent on the very next play. Accepting all well pleaded facts of the Complaint as true, the conduct of Defendants Albert and Rizzo can be said to shock the conscience for purposes of the Fourteenth Amendment Substantive Due Process Clause. Therefore, the Court recommends that Defendants' Motion to Dismiss Plaintiff's claims against Defendants Albert and Rizzo for violation of the Right to Human Dignity be denied.

2. Counts II and III against Albert and Rizzo for violation of the Right to Bodily Integrity: State Created Danger/Special Relationship theories

Defendants also move to dismiss Plaintiff's claim for violation of the Right to Bodily Integrity and argue that Plaintiff has failed to aver the necessary elements of a municipal liability claim. Defendants also move to dismiss Plaintiff's separate claim for State Created Danger/Special Relationship and argue that Plaintiff has pled no facts that show Defendants' actions shock the conscience, and that as a matter of law, no facts support Plaintiff's theory of

"Special Relationship."  Plaintiff contends that he has pled sufficient facts to withstand a motion to dismiss.

As a preliminary matter, Defendants' first argument assumes that the individual Defendants are being sued in their official capacities only.[1]  Although "'[i]t is obviously preferable for the [P]laintiff to be specific in the first instance to avoid any ambiguity'" as to whether he is suing the individual Defendants in their personal and/or official capacities, the Court looks to the specifics of the Second Amended Complaint for clarification.  *See Hafer v. Melo*, 502 U.S. 21, 24 n. 1 (1991) (quoting *Hafer v. Melo*, 912 F.2d 628, 636 n. 7 (3d Cir. 1990)); *Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988) (Third Circuit Court of Appeals takes a flexible approach and interprets pleading to determine whether defendants sued in personal and/or official capacities; request for punitive damages suggested individuals sued in their personal capacities as well as official capacities.).  A comprehensive review of the Second Amended Complaint suggests that the individual Defendants are sued in their personal as well as official capacities.  Further, Plaintiff specifically states at paragraph 274 and at paragraph 2 of his "Prayer for Relief," that he is seeking punitive damages against the individuals only, and not the Defendant School District.  The law is clear that punitive damages may not be awarded to municipal defendants in a § 1983 suit.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Consequently, "resolving all doubts in favor of [P]laintiff, [the Court] assumes Plaintiff is suing the individuals in their personal capacities as well."  *See Gregory*, 843 F.2d at 120.  Hence, the Court interprets Plaintiff's Second Amended Complaint as naming all individual Defendants in their personal and official capacities.

---

[1] An action against individual defendants in their official capacities only is really an action against the named entity because the individual defendants "assume the identity of the [municipality] that employs them."  *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

The United States Supreme Court has specifically stated that "[e]very violation of a person's bodily integrity is an invasion of his or her liberty interest." *Washington v. Harper*, 494 U.S. 210, 237 (1990) (Stevens, J., concurring in part and dissenting in part); *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). Plaintiff separates his claims regarding his liberty interest in bodily integrity into three separate theories: 1) the Fourteenth Amendment substantive due process claim regarding the violation of human dignity discussed *infra* at pp.12-14; 2) "stand alone" counts for violation of the right to bodily integrity; and 3) state created danger/special relationship claims. This division is analytically incorrect. The substantive due process liberty interest in bodily integrity is the constitutional right at issue; "state created danger," and "special relationship" are two independent theories of liability for alleged violations of this constitutional right. *See Brandon V. v. Chichester Sch. Dist.*, Civ. Action No. 06-4687, 2007 WL 2155722, at *6 n.8 (E.D. Pa. July 25, 2007). *See generally Brown v. Farrell*, 293 Fed. Appx. 147 (3d Cir. 2008); *Bennett ex rel. Irvine v. Philadelphia*, 499 F.3d 281 (3d Cir. 2007). Consequently, the Court now addresses the two theories invoked by Plaintiff in support of his argument that his Fourteenth Amendment substantive due process liberty interest in bodily integrity was violated.

## State Created Danger Theory

Defendants move to dismiss Plaintiff's state created danger claim arguing that Plaintiff has failed to aver actions by the Defendants that shock the conscience. Defendants also contend that Plaintiff has failed to allege any affirmative actions taken by Defendants that "created a danger." (ECF No. 20 at 10.) Plaintiff responds that he has sufficiently pled these elements.

In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the United States Supreme Court noted that generally, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the state

to protect citizens from the acts of private persons. *Id.* at 198-200. In *DeShaney*, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's custody and was so badly beaten that the boy suffered severe brain damage. *Id.* at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199-200. The Court continued its analysis with the following dicta that provided the foundation for the "state-created danger" theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id.* at 201. The United States Supreme Court emphasized that the substantive component of the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security." *Id.* at 195. The *DeShaney* court continued that historically, the purpose of substantive due process "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196.

In *Kneipp*, the United States Court of Appeals for the Third Circuit relied on the language in *DeShaney* to recognize that a plaintiff alleging a substantive due process violation pursuant to

42 U.S.C. § 1983 could proceed in accordance with a "state-created danger" theory where a state does play a part in the creation of the dangers faced by a private person, or where through its actions, the state renders the individual more vulnerable to them. *Kneipp*, 95 F.3d at 1205, 1211. In order to prevail on a state-created danger claim, a plaintiff must prove the following:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)). A plaintiff's failure to satisfy any one of the above elements will defeat the state created danger claim. See *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 914 (3d Cir. 1997).

In *Phillips*, the United States Court of Appeals for the Third Circuit discussed the two elements of the state created danger test that Defendants contend are not sufficiently alleged in Plaintiff's Second Amended Complaint. 515 F.3d 224. The court of appeals began its discussion with the fourth element regarding the requirement of an affirmative act, emphasizing the following language in *Bright*:

> "Liability . . . is predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger. It is the *misuse of state authority, rather than a failure to use it,* that can violate the Due Process Clause."

*Phillips*, 515 F.3d at 235 (quoting *Bright*, 443 F.3d at 282) (other citation omitted) (emphasis added by *Phillips* court). The *Phillips* court continued that "[t]he line between action and inaction may not always be clear. However, we have never found a state-created danger claim to be meritorious without an allegation and subsequently showing that state authority was affirmatively exercised in some fashion." *Id.* at 235-36.

Here, the allegations in the Second Amended Complaint sufficiently allege that Defendants acted "affirmatively." Specifically, Plaintiff repeatedly alleges the following: "Plaintiff sustained an obvious traumatic head injury but was *forced* back onto the field of play . . . ." *See* ECF No. 18 at ¶¶ 163, 175, 187, 218 (emphasis added); *see also* ECF No. 18 at ¶¶ 56-58 (ordering Plaintiff back into the game while observing his "disorientated and confused disposition"). *See Yatsko v. Berezwick,* No. 3:06cv2480, 2008 WL 2444503 (M.D. Pa. June 13, 2008) ("Plaintiff [did] not allege that her coaches used their authority to force her to play in the game," and court dismissed substantive due process claim and claim for state created danger). [2]

In *Phillips,* the court of appeals also discussed the second element of the state created danger analysis. The court noted that whether a state actor acts with a degree of culpability that shocks the conscience "depends largely on the circumstances of the case." 515 F.3d at 240. In discussing its then recent case of *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006), the *Phillips* court elaborated as follows:

> The time in which the government actors had to respond to an incident is of particular significance. For example, in *Sanford*, we stated that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." [*Sanford*, 456 F.3d] at 306. We then concluded that although *intent* to cause harm must be found in a

---

[2] Defendants rely on *Yatsko v. Berezwick*, No. 3:06cv2480, 2008 WL 2444503 (M.D. Pa. June 13, 2008), in support of their arguments that their behavior does not shock the conscience and they have engaged in no affirmative conduct. Yet, the United States District Court for the Middle District of Pennsylvania specifically distinguished the factual circumstances that are alleged in the case at bar.

"hyperpressurized environment," where officials are afforded the luxury of a greater degree of deliberation and have time to make "unhurried judgments," *deliberate indifference* is sufficient to support an allegation of culpability. *Id.* We further noted "the possibility that deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *Id.* Finally, where the circumstances require a state actor to make something less exigent than a "split-second" decision but more urgent than an "unhurried judgment," i.e., a state actor is required to act "in a matter of hours or minutes," a court must consider whether a defendant disregarded a "great risk of serious harm rather than a substantial risk." *Id.*

*Phillips*, 515 F.3d at 240-41 (emphasis in original).

The facts alleged in Plaintiff's Second Amended Complaint suggest that Defendants were not acting in a "hyperpressurized environment." They had sufficient time to proceed deliberately in light of the allegations that during two previous football games on October 12, 2007, and November 2, 2007, Plaintiff sustained substantial hits to the head resulting in a temporary loss of hearing, "ringing sensation," and disorientation in the open view of trainers and coaches. (ECF No. 18 at ¶¶ 28-38.) Defendants were then alerted to the fact that Plaintiff and other team members could sustain serious head injuries during the course of play. More importantly, during the opening play of the game on November 9, 2007, Plaintiff sustained an injury as a result of a helmet to helmet collision where he was "clearly disoriented, but was able to jog off of the playing field in a laborious fashion." Plaintiff then proceeded to "aimlessly walk the length of his team's sideline." (ECF No. 18 at ¶¶ 43-51.) Accepting these averments as true, Defendants were not acting in a hyperpressurized environment where they had no choice but to return Plaintiff to the playing field. Instead, they had some luxury of time to make judgments by placing another player on the field of play while they evaluated Plaintiff. In fact, they did not have to place Plaintiff back into the game at all. Consequently, in order for Defendants' conduct to "shock the conscience" under the facts and circumstances alleged in the Second Amended

Complaint, their behavior must reflect deliberate indifference to a substantial risk of serious harm.

Plaintiff's factual allegations, if proved, would show that these Defendants were deliberately indifferent, thereby establishing a level of culpability that was conscience-shocking. The factual averments indicate that Defendants were aware that Plaintiff sustained a head injury on October 12, 2007, November 2, 2007, and again on November 9, 2007. After Plaintiff's November 9 helmet to helmet collision where he was visibly disoriented, Defendants forced him back onto the field for the very next play; he was ordered to deliver a substantial hit to his opponent. Taking these allegations as true and drawing all reasonable inferences therefrom, the Second Amended Complaint sufficiently alleges that these Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff in forcing him back onto the field of play on November 9, 2007.[3]

Therefore, the Court recommends that Defendants' Motion to Dismiss Plaintiff's state created danger claim be denied.

### Special Relationship Theory

The Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the state to protect citizens from the acts of private persons. *DeShaney*, 489 U.S. at 198-200. The United States Court of Appeals for the Third Circuit has recognized two exceptions to this general rule. The first exception, as discussed above, concerns the situation when a "state created danger" is involved. The second exception where the state has a duty to protect or care for individuals from the acts of private citizens arises

---

[3] Even if the Court considers the circumstances surrounding Defendants' actions to not allow for unhurried judgments, the Courts' application of the intermediate state of mind requirement discussed in *Phillips* yields the same result: Defendants disregarded a great risk of serious harm to Plaintiff when they forced him back into the game on November 9, 2007 after observing him in a disoriented state.

when a "special relationship" exists.  The "special relationship" theory is a very limited one that requires a custodial relationship in the nature of incarceration or institutionalization.  *Torisky v. Schweiker*, 446 F.3d 438, 444-45 (3d Cir. 2006).  The United States Court of Appeals for the Third Circuit has repeatedly stated that no special relationship exists between school children and the state because parents decide where to send their children to school, children remain residents of their home, and children are not physically restrained from leaving school during the school day.  *Stanford v. Stiles*, 456 F.3d 298, 304 n.4 (3d Cir. 2006) (discussing *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1371-73 (3d Cir. 1992) (holding that no special relationship exists between school children and the state)); *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 713 (3d Cir. 1993).  *See also Bailey v. Sch. Dist. of Philadelphia*, No. 06-CV-4240, 2008 WL 343088 *2 (E.D. Pa., Feb. 7, 2008).  Therefore, Plaintiff's claims invoking the "special relationship" theory under the Fourteenth Amendment Substantive Due Process Clause must fail.  Any attempt to amend this claim would be futile as a matter of law.  Consequently, it is recommended that Defendants' Motion to Dismiss Plaintiff's claim under the "special relationship" theory be granted.


### PROCEDURAL DUE PROCESS CLAIMS

#### Count IX against Shirey, and Hanslik for violation of the Fourteenth Amendment Due Process Clause concerning Plaintiff's Property Interest in Education

Defendants argue that although Plaintiff does have a protected property interest in the right to an education, the allegations of the Second Amended Complaint demonstrate that Plaintiff was not "in any way deprived of a public education."  (ECF No. 20 at 11.)  Plaintiff responds that he has sufficiently pled facts to demonstrate that he has not been afforded a tenth

grade education or beyond "as the result of the fabrication and/or manipulation of [his] grades, which led to him receiving grades that were not indicative of his academic performance." (ECF No. 22 at 16.)

Under the Fourteenth Amendment, no State shall "deprive any person of life, liberty or property, without due process of law . . . ." U.S. CONSTI. amend. XIV, § 1. Protected property interests are not normally created by the United States Constitution, but are created and defined by independent sources such as state law. *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A state may choose to provide its children with a public education, and by doing so, it has established a property interest protected by the Fourteenth Amendment. *See Goss*, 419 U.S. at 573. "It is undisputed that Pennsylvania children are the recipients of a statutory entitlement to a public education." *D.C., K.C., v. Sch. Dist. of Philadelphia*, No. 003675, 2004 WL 5135863 (Pa. Com. Pl. January 30, 2004) (quoting *Lisa H. v. State Bd. of Ed.,* 447 A.2d 669, 672 (1982) ("[T]he right to a public education in Pennsylvania is not a fundamental right but rather, a statutory one and that as such, it is limited by statutory provisions.")). The statutory right flows from the Pennsylvania Constitution which mandates that "the General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. Art III, § 14.

Clearly, Plaintiff possesses a protected property interest in education. The issue here is whether Plaintiff has sufficiently alleged a plausible claim for relief that his protected property interest in education was denied. Plaintiff alleges that Defendant Hanslik, the Assistant Principal, indicated that he knew of Plaintiff's brain injuries (ECF No. 18 at ¶ 111), that Plaintiff's mother pled with Defendant School District to employ a "Brain Steps Advocate" to

assist Plaintiff with his school work as directed by Plaintiff's treating physicians (ECF No. 18 at ¶ 117), that at some point Plaintiff's mother and a Brain Steps Advocate met with Defendant Hanslik, but accommodations were never instituted which allowed Plaintiff to "fully realize the benefits of a Brain Steps Advocate." (ECF No. 18 at ¶¶ 119-120.) Plaintiff further avers that thereafter, Plaintiff and his mother met with Defendant Principal Shirey to request assistance. Shirey claimed that he was not informed of Plaintiff's difficulties regarding his school work but "suggested that he could improve Plaintiff's grades with a 'shake of his magic wand.'" (ECF No. 18 at ¶ 130.) Thereafter, even though Plaintiff's school attendance decreased due to his injuries, he earned nearly straight As -- grades that he had not achieved before his brain injuries. During his junior year, Plaintiff was absent for 50% of the school year. Yet, when he would inquire with teachers as to what he could do to improve his grades, the teachers, on at least two occasions in his presence, changed his grade from a failing mark to a passing mark. Plaintiff avers that this practice of inflating his grades continued until his completion of high school. Hence, Plaintiff avers that even though he graduated from Highlands High School, he possesses an education that is below the tenth grade level, and consequently, was denied his right to an education.

After an exhaustive search, the Court has been unable to locate any case law to suggest that simply because a child is physically present in a school, that he is not being denied his protected property interest in education where principal and teachers are intentionally inflating grades to push the student through to graduation. Further, the parties have not directed the Court to case law applicable to these alleged facts. Consequently, the Court will permit Plaintiff's Fourteenth Amendment claim for denial of a protected property interest to go forward at this

stage of the proceedings. Therefore, the Court respectfully recommends that Defendants'

Motion to Dismiss on this claim be denied.


<u>EQUAL PROTECTION CLAIM</u>

<u>Count XI against Shirey and Hanslik for violation of the Equal Protection Clause of the
Fourteenth Amendment</u>

Defendants move to dismiss Plaintiff's equal protection claim and argue that Plaintiff has

averred no facts to show "purposeful discrimination," and that Plaintiff was treated differently

than others similarly situated. (ECF No. 20 at 14.) Plaintiff responds that he has sufficiently

averred that Plaintiff was purposefully discriminated against because of his disability or

perceived disability, and that he was treated differently than other disabled students. (ECF No.

22 at 19-20.)

The Equal Protection Clause provides "no . . . state shall deny any person within its

jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. Pursuant to the

Equal Protection Clause, all persons are not entitled to be treated identically; rather, the Equal

Protection Clause requires that "all persons similarly situated should be treated alike." *Artway v.

Attorney General of N.J.,* 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v.

Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). "To state a claim under the Equal Protection

Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the

plaintiff because of membership in a protected class." *Shoemaker v. City of Lock Haven,* 906 F.

Supp. 230, 238 (M.D. Pa. 1995) (quoting *Henry v. Metro. Sewer Dist.,* 922 F.2d 332, 341 (6th

Cir. 1990)); *see Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 423 (3d Cir. 2000).

Protected classes include those based on race, religion, national origin, and those impacting

fundamental rights. *Artway*, 81 F.3d at 1267. Therefore, if the differential treatment involves a protected classification such as race, the government must have a compelling reason for the differential treatment. *City of Cleburne,* 473 U.S. at 440. A § 1983 plaintiff must allege the existence of purposeful discrimination, and aver facts to show that he was treated differently from similarly situated individuals. *See Kennan v. City of Philadelphia,* 983 F.2d 459, 465 (3d Cir. 1992).

In examining the limitations that § 1 of the Fourteenth Amendment places upon the States' treatment of the disabled, the United States Supreme Court noted the following in *Bd. of Trustees of the Univ. of Alabama v. Garrett*:

> States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could quite hardheadedly – and perhaps hardheartedly – hold to job-qualification requirements which do not make allowance for the disabled. If special accommodations for the disabled are to be required, they have to come from *positive law* and not through the Equal Protection Clause.

531 U.S. 356, 367-68 (2001) (emphasis added) (footnote omitted).

Here, Plaintiff argues that he has sufficiently pled an equal protection claim because he avers that he was not afforded the same assistance as "others with differing disabilities." (ECF No. 22 at 19.) Plaintiff relies on *James S. v. Sch. Dist. of Philadelphia*, 559 F. Supp.2d 600, 625-26 (E.D. Pa. 2008), where the court denied a motion to dismiss an equal protection claim based upon disability. The *James S.* court recognized the Supreme Court's admonition in *Garrett* that the requirement of special accommodations for the disabled must come from positive law, but distinguished *Garrett* for, inter alia, the following reasons: 1) the Amended Complaint specifically averred that the school district's treatment of James deprived him of equal access to the education afforded to children *without* disabilities; and 2) the Amended Complaint also

averted that James S. was disciplined and pushed into the juvenile justice system on account of his disability; that is, the district failed to provide him with as safe a school environment as those students *without* disabilities. 559 F. Supp.2d at 626. Here, Plaintiff's equal protection claim concerns his failure to receive the same assistance as other disabled students, that is, a failure to accommodate. (ECF No. 18 at ¶¶ 117-120, 258-59.) *See Kevin M. v. Bristol Twp. Sch. Dist.*, No. 00CV6030, 2002 WL 73233, at *8 (E.D. Pa. Jan. 16, 2002) (plaintiff's equal protection claim fails where special accommodations for disabled must come from positive law and not through Equal Protection Clause).

Hence, the Court is bound to follow the United States Supreme Court's instruction in *Garrett,* and dismiss Plaintiff's equal protection claim. Under the facts of this case, any attempt to amend would be futile. Consequently, Defendants' Motion to Dismiss Plaintiff's equal protection claim should be granted.

## SECTION 1983 MUNICIPAL LIABILITY CLAIMS

In *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy"

requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id*.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id*. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

    1.  <u>Counts V and VII against the School District for violation of the Right to Human Dignity and for Violation of the Right to Bodily Integrity: State Created Danger theory</u>

Plaintiff alleges facts sufficient to make out a claim for municipal liability based upon the alleged violations of the right to human dignity and state created danger theory. The allegations concerning Plaintiff's injuries at the October 12th, November 2nd, and November 9[th,] 2007 football games and Defendants' responses to them, demonstrate a custom, or practice of

Defendant School District of deliberate indifference to the risk of violating Plaintiff's rights. That is, Plaintiff avers that their failure to recognize and educate their student athletes concerning the causes, symptoms and dangers of traumatic head injuries was a common custom or practice that led to the violation of Plaintiff's constitutional rights. The factual allegations indicate that Plaintiff's injuries at all three games occurred in open view of coaches and trainers, and that at no time did the District address Plaintiff's injuries or the dangers of head injuries in general. Consequently, Plaintiff's factual allegations support his theory of municipal liability that the District had a custom or practice of ignoring the consequences of head injuries by ordering players back onto the field of play after sustaining blows to the head. Defendants, by reason of their positions as coaches and trainers, knew that this custom or practice could result in the denial of Plaintiff's constitutional right to bodily integrity as advanced through his theories of "human dignity" and "state created" danger. Therefore, it is recommended that Defendants' Motion to Dismiss Plaintiff's municipal liability claims against Defendant School District for violation of the right to human dignity and state created danger be denied.

2. Count IX against the School District for violation of the Fourteenth Amendment Due Process Clause concerning Plaintiff's Property Interest in Education

Plaintiff has averred enough facts to state a plausible claim for municipal liability against Defendant School District for violation of Plaintiff's Fourteenth Amendment property interest in education. Plaintiff describes meetings, initially with Assistant Principal Hanslik, and later with Principal Shirey, beginning immediately after Plaintiff's injuries in November 2007 and continuing in January 2008. Plaintiff's mother attended, and detailed her concerns regarding Plaintiff's sudden inability to concentrate on his studies both inside and outside of the classroom. At the initial meeting in November 2007, Hanslik advised that he was already aware of the injuries sustained by Plaintiff. Plaintiff alleges that his symptoms worsened after the initial

meeting, and his mother, at the direction of Plaintiff's treating physicians, "pled" with the School District to employ a Brain Steps Advocate to assist Plaintiff with his school work. Plaintiff further avers that at some time, Defendant Hanslik and Plaintiff's mother met with a Brain Steps Advocate but accommodations were never initiated which allowed Plaintiff to "fully realize the benefits" of the advocate. Plaintiff avers that this inaction was an adopted practice, custom or policy of the District that eventually led to the deprivation of Plaintiff's property interest in education.

In addition, Plaintiff avers that as his condition continued to worsen, and his grades suffered "substantially," Plaintiff and his mother scheduled a meeting with Principal Shirey in January 2008. By this time, Plaintiff's grades had declined to such a level that he and his mother were concerned that he would not pass the tenth grade. Principal Shirey claimed that he was unaware of Plaintiff's injuries, attendant cognitive issues, and his difficulties in maintaining his attendance at school. After learning of the seriousness of Plaintiff's injuries and his current academic problems, Principal Shirey offered Plaintiff and his mother a solution: he could improve Plaintiff's grades with a "shake of his magic wand." Plaintiff and his mother left the meeting without a solution. Plaintiff avers that Defendant Shirey's offer to fabricate/manipulate Plaintiff's grades was an adopted practice, custom or policy of the District used in deliberate indifference to the rights of students to obtain their protected property interest in education.

Consequently, with the beginning of the spring semester in January of 2008, Plaintiff's attendance continued to decrease and he believes he missed the remainder of the school year. Yet, Plaintiff finished the school year with nearly straight As. Plaintiff's grades were higher than they had been before his injury. Plaintiff avers that his grades were inflated to move him through his sophomore year and into his junior year. Plaintiff avers that his grades continued to be

manipulated his junior and senior years such that he did not even earn a tenth grade education upon graduation his senior year. Plaintiff provides additional facts as to how he was denied his property interest in education: he missed nearly 50% of his junior year, yet he continued to receive well above passing marks; Plaintiff personally witnessed his grades being inflated by two teachers when inquiring how he could improve his grade in their respective classes.

Hence, Plaintiff avers facts sufficient to demonstrate a custom or policy employed by Defendant School District that denied Plaintiff his right to an education as guaranteed by the Fourteenth Amendment. It is recommended that Defendants' Motion to Dismiss Plaintiff's municipal liability claim for violation of his Fourteenth Amendment due process property interest in education be denied.

3. <u>Count XI against the School District for violation of the Equal Protection Clause of the Fourteenth Amendment and Count VII against the School District for Violation of the Right to Bodily Integrity: Special Relationship theory</u>

A municipality will be liable under § 1983 only if one if its employees violated a plaintiff's civil rights as a result of a municipal policy or practice. Monell, 436 U.S. 658 (1978). The School District cannot be liable under Monell unless one of its employees is primarily liable under § 1983. Because the motion to dismiss should be granted on Plaintiff's § 1983 equal protection claim against the Defendants Shirey and Hanslik, Plaintiff cannot maintain his equal protection claim against the School District. Similarly, because the motion to dismiss should be granted on Plaintiff's § 1983 special relationship claim against Defendants Albert and Rizzo, Plaintiff cannot maintain his special relationship claim against Defendant School District. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989). Consequently, Defendants' Motion to Dismiss Plaintiff's equal protection claim and special relationship claim against Defendant School District should be granted.

**ADA and RA CLAIMS**

Count X against Defendants Shirey, Hanslik, and Highlands School District

Defendants move to dismiss Plaintiff's ADA and RA claims arguing that Plaintiff has failed to aver facts to make out a claim under these provisions. (ECF No. 20 at 13.) Plaintiff responds that he has alleged sufficient facts under the ADA and RA.

Pursuant to the RA[4], Plaintiff must allege sufficient facts to establish the following:

> (1) he is disabled as defined in the Act; (2) that he is otherwise qualified to participate in school activities; (3) the school or the board of education receives federal financial assistance; (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at the school; and (5) the school or the board of education knew or should be reasonably expected to know of his disability.

*J.L. v. Ambridge Area School Dist.,* 622 F. Supp.2d 257,274-75 (W.D. Pa. 2008) (quoting

*Indiana Area School Dist. v. H.H.*, 428 F Supp.2d 361, 363 (W.D. Pa. 2006)). All of the same elements, except the third relating to federal financial assistance, are required to make out a claim under the ADA.[5] 42 U.S.C. § 12132. Consequently, "[w]hether suit is filed under the

---

[4] Section 504 of the Rehabilitation Act provides, in relevant part, as follows:

> § 794. Nondiscrimination under Federal grants and programs
> (a) Promulgation of rules and regulations
>
> No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

[5] The ADA provides in relevant part as follows:

> § 12132 Discrimination

Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same." *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995).

Under the ADA, disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999); *superseded by statute on other grounds*, Amendments Act of 2008, Pub. L. No. 110-325, § 3(4)(E)(i), 122 Stat. 3553 (2008). *See also Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999) (There is a "statutory obligation to determine the existence of disabilities on a case-by-case basis."). An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii) (2008). Major life activities include learning. 29 C.F.R. § 1630.2(i) (2008).

Here, Plaintiff has set forth sufficient facts to state a plausible claim for relief pursuant to the RA and the ADA. For purposes of the RA, the parties do not appear to dispute that Defendant School District receives federal financial assistance.

Plaintiff sufficiently avers that he was rendered disabled as a result of his traumatic brain injuries which severely restricted his ability to learn: he alleges that he his ability to focus,

---

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

maintain school attendance and earn passing grades was severely restricted. *See* Second

Amended Complaint at ¶¶ 108-153. He further avers that Defendants knew, but refused to

acknowledge, that he was learning disabled as evidenced by the manipulation of his grades. *See*

Second Amended Complaint at ¶¶ 110-12, 117-19, 124-139, 145-48. At a minimum, Plaintiff's

averments suggest that Defendants regarded him as disabled. Yet, according to the Second

Amended Complaint, Defendants refused Plaintiff's mother's request "to employ a Brain Steps

Advocate to assist Plaintiff with his school work" as directed by Plaintiff's treating physicians.

(ECF No. 18 at ¶¶ 117-120.)

Consequently, Plaintiff sufficiently avers that because of his severe traumatic brain

injuries, he "was excluded from participation in, denied the benefits of, or subject to

discrimination" at Highlands High School. *See* 29 U.S.C. § 794 (a). Hence, it is respectfully

recommended that Defendants' Motion to Dismiss Plaintiff's ADA and RA claims be denied.


## STATE CONSTITUTIONAL and NEGLIGENCE CLAIMS

1. Count IV against Albert and Rizzo for violation of bodily integrity in violation of the
   Pennsylvania Constitution, Art. I, Sec. 1, and Count VIII against Shirey, Hanslik and
   the School District for injury to Plaintiff's Property Interest in Education pursuant to
   the Pennsylvania Constitution, Art. I, Sec. 1

"The Pennsylvania Supreme Court has held that the requirements of Article I, Section 1,

of the Pennsylvania Constitution are not distinguishable from the Due Process Clause of the

[Fourteenth] Amendment of the United States Constitution, and this Court must apply the same

analysis to both claims." *Doe v. North Allegheny Sch. Dist.*, No. 2:08cv1383, 2011 WL

3667279, at *6 (W.D. Pa. Aug. 22, 2011) (citing *Pennsylvania Game Comm'n v. Marich*, 666

A.2d 253, 255 n.6 (Pa. 1995); *Burger v. Bd. of Sch. Dirs.*, 839 A.2d 1055, 1062 n.12 (Pa. 2003)).

Because this Court recommends that Defendants' Motion to Dismiss Plaintiff's due process

claims be denied, Plaintiff's claims under the Pennsylvania Constitution must also survive Defendants' motion. Therefore, it is recommended that Defendants' Motion to Dismiss Plaintiff's claim under Article I, Section 1 of the Pennsylvania Constitution for violation of the right to bodily integrity and for injury to Plaintiff's Property Interest in Education be denied.

    2.  <u>Count XII against Rizzo for negligence</u>

In light of the Court's analysis regarding Plaintiff's substantive due process claims at pp. 12-21, *infra*, the Court respectfully recommends that Defendants' Motion to Dismiss Plaintiff's negligence claim against Defendant Rizzo be denied.


III. **<u>CONCLUSION</u>**

It is respectfully recommended that the Motion to Dismiss filed by Defendants at ECF No. 19 be granted in part and denied in part. It should be denied with prejudice in all respects except as it relates to the following claims: 1) special relationship claim as to all defendants; 2) equal protection claim as to all defendants; and 3) the state action issue as it concerns Defendant Rizzo.

It is further recommended that Defendants' Motion to Dismiss Defendant Rizzo be denied without prejudice and that Plaintiff be granted leave to amend his Complaint as to whether Defendant Rizzo is a state actor. If Plaintiff fails to file a curative amendment within the time allowed by the District Judge, then this Magistrate Judge recommends that Defendant Rizzo be dismissed with prejudice. Upon the filing of a Third Amended Complaint, Defendants may file a Second Motion to Dismiss on the issue of whether Defendant Rizzo is a state actor if they so desire.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: February 7, 2012     BY THE COURT:

                  LISA PUPO LENIHAN
                  Chief United States Magistrate Judge

cc:  All Counsel of Record
   Via Electronic Mail